OPINION OF THE COURT BY JUSTICE HUGHES
The Kentucky State Police (KSP), a department within the Commonwealth's Justice and Public Safely Cabinet, seeks discretionary review of a Court of Appeals' decision upholding a motion by the Estate of LeBron Gaither for post-judgment interest on damages awarded by the Board of Claims. This is the third appeal in this matter, arising from the July 1995 murder of LeBron Gaither, and marks the parties' second visit to this Court. We granted the motion for discretionary review to consider KSP's contention that the Court of Appeals misconstrued Civil Rule (CR) 54.01 and the statutes (Kentucky Revised Statute (KRS) 350.040, KRS 44.130, and KRS 44.140 ) which govern post-judgment interest on Board of Claims' awards. Agreeing with the Court of Appeals that in the circumstances of this case the Estate is entitled to post-judgment interest from the date of the initial Franklin Circuit Court judgment, we affirm.
RELEVANT FACTS
We recounted in detail the series of events that culminated in Gaither's death in Gaither v. Justice & Pub. Safety Cabinet, 447 S.W.3d 628 (Ky. 2014). To recap briefly, while he was still just eighteen years old, Gaither worked as a confidential informant for KSP officers investigating illegal drug trafficking in Marion and Taylor Counties. Gaither's role was to make controlled buys from suspected drug dealers. After Gaither had made several such buys, the detectives for whom he was *669 working had him testify before grand juries in the two counties. Notwithstanding that obvious compromise of Gaither's confidentiality, soon after the grand jury appearances, the detectives had him attempt to initiate a "buy/bust" involving one of the dealers against whom Gaither had testified. Unbeknownst to the detectives, that dealer had been tipped off about Gaither's testimony by a member of the Taylor County Grand Jury. Despite the detectives' precautions, during the "buy/bust," the dealer managed to separate Gaither from the police detectives, drove him to an adjoining county, and brutually murdered him.
In February 1998, Gaither's Estate, which is administered by Gaither's grandmother, Virginia Gaither, filed a wrongful-death action against KSP in the Board of Claims. See KRS 44.073. The Estate alleged that Gaither's July 1996 death was the result of negligently performed ministerial acts by certain KSP officers within the course and scope of their employment. As noted above, that claim has had a lengthy procedural history.
The Board of Claims originally ruled, in accord with Gray v. Commonwealth, Transp. Cabinet, Dep't of Highways, 973 S.W.2d 61 (Ky. App. 1997), that the claim was untimely because it was not filed within one year of Gaither's death. The Estate appealed, and eventually, in Gaither v. Bd. of Claims, 161 S.W.3d 345 (Ky. App. 2004), the Court of Appeals considered an intervening decision by this Court; overruled Gray in light of that decision; and deemed the Estate's claim timely, because it was filed within one year of the personal representative's appointment and within two years of the decedent's death. The Court of Appeals remanded the case to the Board for further proceedings.
On remand, the Board's new proceedings culminated in a December 2009 Final Order upholding the Estate's negligence claim. In the Board's view, the detectives' responsibilities to a confidential informant, at least those responsibilities at issue in this case, were so well established as to constitute "a series of ministerial duties," the breach of which, under the principles of comparative negligence, rendered KSP liable for thirty percent of Gaither's damages. Finding Gaither's damages to have been "funeral expenses in the amount of $5,573.08 and the total destruction of the decedent's earning capacity ... amount[ing] to $562,433.00," for a sum of $568,006.08, the Board concluded that "the Respondent [KSP] is liable for $168,729.90 in damages to the Claimant [the Estate]."[1]
KSP appealed from that award to the Franklin Circuit Court, and on January 5, 2011, the circuit court entered its Opinion and Order reversing the decision of the Board. After reiterating that the Board of Claims Act waives the Commonwealth's sovereign immunity for the negligent performance by its employees of ministerial duties, KRS 44.073(2), but not for the negligent performance of discretionary duties, KRS 44.073(13)(a), the court held that "the acts performed by KSP in this case were discretionary, not ministerial," with the result that "KSP is immune from suit under the Board of Claims Act." This second dismissal of the Estate's action rendered other issues moot, including (1) KSP's alternative contention that even if KSP was deemed liable, the Board's award should be reduced to reflect the parties' stipulations about damages and (2) the Estate's cross-appeal seeking an award of interests and costs.
*670 The Estate again appealed, and although the Court of Appeals affirmed the dismissal on immunity grounds, the Estate ultimately prevailed in this Court. In Gaither v. Justice & Pub. Safety Cabinet , supra , we explained that while much of the Gaither-related police work in this case should be deemed discretionary and so outside the purview of the Board of Claims Act, the use of Gaither in the "buy/bust" operation after his confidentiality had been utterly compromised was different. This Court held that the Board reasonably found the detectives' decision to send Gaither to yet another "buy" to be contrary to "a clear and certain imperative within the law enforcement professions," 447 S.W.3d at 635, an imperative so clear and well established as to have become ministerial. We held "that the duty compelling the performance of a ministerial act need not spring from a specific statute, administrative regulation, or formal policy statement or protocol[, but] ... may flow from common law duties or professional customs and practices." Id. Accordingly, we reversed the dismissal of the Estate's action and reinstated the Board's liability finding.
We agreed with KSP, however, that the Board's award of damages exceeded the parties' stipulations and found "nothing in the record to support the additional amount." 447 S.W.3d at 640. Instead, noting "lost earnings," as stipulated, of $490,024.00, and proven funeral expenses of $5,573.08, we added the two, applied the thirty percent of fault the Board apportioned to KSP to arrive at $148,787.12 as KSP's share, and instructed the Board on remand to enter a Final Order reflecting an award in that amount.
The Board complied with this mandate by Final Order entered in January 2015, and KSP then promptly paid the Estate $148,787.12. Soon thereafter, the Estate moved the circuit court to "supplement" the award by granting post-judgment interest on the award amount from the date of the circuit court's initial, take-nothing judgment in favor of KSP, i.e. , the January 5, 2011 "Opinion and Order," in which the circuit court erroneously deemed KSP immune from the Estate's suit. According to the Estate's estimate, the interest from that date until the award was paid in February 2015 is about $85,000.00.[2]
Citing Thurman v. Commonwealth, Transp. Cabinet, Dep't of Highways, 981 S.W.2d 140 (Ky. App. 1998), the circuit court denied the Estate's motion for interest. The post-judgment interest statute ( KRS 360.040 ), the court noted, does not apply to Board awards as such ( Thurman ), but only to the judgment entered after the award has been filed in or appealed to the circuit court pursuant to KRS 44.130 or KRS 44.140, respectively. In the Franklin Circuit Court's view, its January 5, 2011 order vacating the award could not be deemed to satisfy either of those statutes.
For the third time, the Estate then appealed, and the Court of Appeals reversed. The appellate panel acknowledged, as originally entered, the January 2011 take-nothing judgment did not support an award of interest. Under pertinent caselaw, however-in particular, Elpers v. Johnson, 386 S.W.2d 267 (Ky. 1965), and Commonwealth, Transp. Cabinet, Dep't of Highways v. Esenbock, 200 S.W.3d 489 (Ky. App. 2006) -that initial circuit court judgment, *671 having been corrected and increased on appeal, should be understood as if it had-correctly-upheld the Board's award to the extent of $148,787.12, with interest accruing accordingly from the date of "entry," i.e., from January 5, 2011.
We granted KSP's motion for discretionary review to weigh in on what appears to be a recurring issue in the Court of Appeals.[3] Agreeing, basically, with the Court of Appeals' reading of Elpers and the pertinent statutes, we affirm.
ANALYSIS
Because the parties do not dispute the pertinent facts, the questions before us concerning if and when post-judgment interest began to accrue on the Estate's award from the Board of Claims are purely matters of law, specifically statutory and rule construction and the application of relevant caselaw. Accordingly, our standard of review is de novo. Board of Educ. v. Hurley-Ric hards, 396 S.W.3d 879, 885 (Ky. 2013) (noting that statutory construction is a matter of law).
As KSP correctly notes, the Commonwealth and its agencies are as immune from judgments against them for interest as they are from judgments for other sorts of damages. Bankers Bond Co. v. Buckingham, 265 Ky. 712, 97 S.W.2d 596 (1936) ; Commonwealth, Dep't of Transp., Bureau of Highways v. Lamb, 549 S.W.2d 504 (Ky. 1976) ; Powell v. Board of Educ. 829 S.W.2d 940 (Ky. App. 1991). Thus, "[i]t is a well-settled principle that neither a state nor public agency is liable for interest on public debts unless there is statutory authority or a contractual provision authorizing the payment of interest." Powell, 829 S.W.2d at 941 (citing Lamb and Bankers Bond ).
The Estate's first hurdle, therefore, is to show that interest on a Board of Claims' award has been authorized by the General Assembly. As correctly noted by the Court of Appeals, that question was long ago decided in the Estate's favor. In Commonwealth, Dep't of Highways v. Young, 380 S.W.2d 239 (Ky. 1964), the former Court of Appeals upheld an award of post-judgment interest under the Board of Claims Act. The Court noted that although the Act did not make express provision for interest on Board awards, the Act did [and does] allow appeals from the Board to circuit court, and provided [and provides] that
"The court shall enter its findings on the order book as a judgment of the court, and such judgment shall have the same effect and be enforceable as any other judgment of the court in civil causes. " (Emphasis added.) Thus, if any other judgment in the Nelson Circuit Court would draw interest from the date of its entry, then so would this one [affirming the Board's award].
....
The statute authorizing the procedure in this case [the appeal from the Board to the circuit court] provides in substance that the judgment of the circuit court shall be enforceable against the Commonwealth as any other judgment would be enforceable, which is the equivalent of saying that all the attributes of any other judgment would follow this one.
Young, 380 S.W.2d at 240, 241 (quoting KRS 44.140(2) [now (5) ] ).
As the Young Court noted, the post-judgment interest statute, KRS 360.040, applies to judgments entered on *672 appeal from Board of Claims' awards in the same way and to the same extent as it does to other judgments. Under that statute, Young, whose award was affirmed by both the circuit court and the former Court of Appeals, was entitled to post-judgment interest for the two years of appellate delay between the initial entry of the circuit court judgment confirming the Board award and payment of the award following affirmance on appeal. The General Assembly's waiver of immunity with respect to post-judgment interest under the Board of Claims Act is thus well established. We turn then to the post-judgment interest recoverable by the Estate in this case.
For the relevant time period, the post-judgment interest statute, KRS 360.040, provided in pertinent part that "[a] judgment shall bear twelve percent (12%) interest compounded annually from its date."[4] Such statutes are widespread. L. R. James, Date from which interest on judgment starts running, as affected by modification of amount of judgment on appeal, 4 A.L.R.3d 1221 (originally published in 1965) (collecting cases from the federal courts and from courts in virtually every state in the country discussing and applying post-judgment interest statutes broadly similar to ours) (hereafter "James"). Their purpose, generally, is " 'to place [judgments] upon the same footing as other liquidated demands and thus insure compensation to the creditor for the loss of the use of his money during the period in which he was wrongfully deprived of it.' " Emberton v. GMRI, 299 S.W.3d 565, 583 (Ky. 2009) (quoting Farmer v. Stubblefield, 297 Ky. 512, 180 S.W.2d 405 (1944) ) (emphasis removed). See also Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 835-36, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) (" '[T]he purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant.' ") (quoting Poleto v. Consolidated Rail Corp., 826 F.2d 1270, 1280 (3rd Cir. 1987) ).
KRS Chapter 360 (the "Interest and Usury" chapter) does not define "judgment" for purposes of the post-judgment interest statute, but as generally understood in our law, "[a] judgment is a written order of a court adjudicating a claim or claims in an action or proceeding." CR 54.01. The statute has historically been read as referring to the "judgment" of the trial court. The statute's reference to the judgment's "date," in the singular, furthermore, indicates the trial court's "final judgment," which our rules define as "a final order adjudicating all the rights of all the parties in an action or proceeding." Id.; see Atlantic Painting & Contracting, Inc. v. Nashville Bridge Co., 670 S.W.2d 841, 847 (Ky. 1984) (upholding an interest award on an unliquidated claim from "the date of final judgment in the trial court") (emphasis supplied). Such a judgment will usually trigger appellate deadlines, and, generally, the accrual of post-judgment interest. CR 73.02 ; KRS 360.040 ("A judgment shall bear ... interest ... from its date.").
KRS 360.040 becomes ambiguous, or at least seemingly so, when for some reason the trial court must enter more than one "final" judgment. A trial court may amend its judgment pursuant to a motion, for *673 example, or in accord with the mandate of an appellate court. A trial court's final judgment might be set aside for some reason, and a new judgment entered, with or without new proceedings. Questions arise in such cases as to which judgment-the original, erroneous one or the subsequent, new or modified one-starts the accrual of post-judgment interest. See, e.g., Strunk v. Lawson, 447 S.W.3d 641 (Ky. App. 2013) (addressing a post-trial-motion scenario). Because this case involves two types of correction on appeal-the reversal of the circuit court's initial immunity ruling, as well as the reduction of the Board's initial damages' award-we, after some general considerations, focus separately on those reasons for altering the judgment.
If a court, either the trial court pursuant to a post-trial motion or an appellate court, sets aside or reverses a final judgment awarding damages (e.g., for error tainting the liability determination or undermining the damages award), and grants a motion for new trial or remands for further proceedings, the original, erroneous trial court judgment is no longer final; it no longer disposes of all the claims of all the parties. Thus, in accord with the straightforward meaning of KRS 360.040, if a remand results in a new award of damages, post-judgment interest accrues from the date of the new final judgment, rather than that of the original, but superseded, erroneous judgment. Cf. Kaiser Aluminum, 494 U.S. at 835-36, 110 S.Ct. 1570 (holding that, where the trial court granted a new trial as to damages, post-judgment interest began to accrue following the new trial, not as of the first one. Post-judgment interest compensates for the loss of the use of one's damages "between the ascertainment of the damage and the payment by the defendant.... Where the [original] judgment on damages was not supported by the evidence, the damages have not been 'ascertained' in any meaningful way.") (citations and internal quotation marks omitted); and see Maynard v. Maynard, 251 S.W.2d 454, 456-57 (Ky. 1952) (holding that an original divorce award vacated on appeal because excessive and remanded for reapportionment was not a final judgment on which interest could accrue); Clark v. Clark, 487 S.W.2d 272 (Ky. 1972) (same holding in another divorce case where the original apportionment was remanded for reconsideration in light of an intervening case and, after new evidentiary proceedings, the result was a significantly different award).
On the other hand, and at the other extreme, if an award of damages is simply affirmed on appeal, as was the posture in Young, supra, then there is no "new" judgment following the appeal, just the reiteration of the judgment entered before the appeal was taken. That judgment thus retains its finality (i.e., it still disposes of the case), and interest accrues under KRS 360.040"from its [the judgment's] date." In that situation the judgment's date is simply the date of its original entry. Cf. Emberton v. GMRI, supra, (upholding the constitutionality of KRS 360.040 against a claim that by imposing interest during the pendency of an unsuccessful appeal from a "money judgment," the statute discriminates unfairly between money judgment appellants and appellants from other types of judgment.); and cf. DeLong Equip. Co. v. Washington Mills Electro Minerals Corp., 997 F.2d 1340, 1341 (11th Cir. 1993) (noting that under Fed. R. App. P. (Federal Rule of Appellate Procedure) 37, "[a]warding interest from the date of the district court judgment is the usual rule when that judgment is affirmed").
Between those two extremes-where an appeal results in something other than the straightforward reversal or straightforward affirmance of a trial court's award of damages-whether post-judgment interest *674 begins to accrue at the time of the first judgment or of the remand judgment has been said to depend on "the extent to which [the] judgment is invalidated on appeal [,]" Wheeler v. John Deere Co., 935 F.2d 1090, 1097 (10th Cir. 1991) ; or on whether "the trial court possessed a sufficient record to render a correct judgment," Long v. Castle Texas Prod. Ltd. P'ship, 426 S.W.3d 73, 81 (Tex. 2014) ; or on whether the remand resulted from a claimant's "failure to present sufficient evidence" as opposed to "a judge's legal mistake or misuse of discretion." McKnight v. Circuit City Stores, Inc., 14 Fed.Appx. 147, 155 (4th Cir. 2001). Fortunately, this case does not require us to address the question in such general terms. We are concerned here with the effect of our 2014 rulings in Gaither v. Justice & Pub. Safety Cabinet, 447 S.W.3d at 628, that (1) reversed the lower courts' determination that KSP is immune from the Estate's claim, thus reinstating the Board's award; but (2) simultaneously reduced that award so as to bring it into conformity with the parties' stipulations. These two types of appellate rulings-reinstatements of, vacated awards and modifications of award amounts where the modification does not require the record to be reopened-are common enough to have acquired settled post-judgment interest consequences. Both allow for the accrual of post-judgment interest from the date of the pre-appeal, erroneous judgment.
Appellate reinstatements occur, for example, in cases where the trial court has granted a defense JNOV or new trial motion, DeLong Equip. Co., supra; has reversed an arbitration award, Merit Ins. Co. v. Leatherby Ins. Co., 728 F.2d 943 (7th Cir. 1984) ; or, as in this case, has reversed an administrative damages award. Brooks v. United States, 757 F.2d 734 (5th Cir. 1985). In DeLong, which involved the reinstatement of a jury verdict following the trial court's grant of a new trial motion, the circuit court explained that "[i]n cases such as this one, which reinstate a jury verdict for the plaintiff, we think that equity ordinarily, and perhaps always, commands that interest be awarded from the date of the original [erroneous] judgment." 997 F.2d at 1342. That is so, the Court explained, because, among other reasons, the integrity of the original award is compromised if its value is, in effect, reduced (by delay) without some legal justification for the reduction. Id. While this reason applies with particular force to jury verdicts, which have constitutional stature, it applies as well to administrative awards, which are undermined to the extent that appellate delay is allowed to reduce their value.
With respect to appellate rulings upholding the original determination of liability, but adjusting on the existing record the amount of the award,[5] as this Court did the Board's original award in this case, the clear majority position is that post-judgment interest accrues from the original judgment. James, 4 A.L.R.3d 1221, supra. If the appellate mandate requires a reduction of the award, as here, the original award can be deemed " 'correct to the extent it was permitted to stand, and interest on a judgment thus partially affirmed should be computed from the date of its initial entry.' " Institutionalized Juveniles v. Secretary of Public Welfare, 758 F.2d 897, 927 (3rd Cir. 1985) (quoting Perkins v. Standard Oil Co., 487 F.2d 672, 676 (9th Cir. 1973) ).
*675 Even if the appellate court's mandate increases the award, the general rule is that "interest on the revised award will run from the date of the original judgment." Brooks v. United States, 757 F.2d at 741 (quoting Copper Liquor, Inc. v. Adolph Coors Co., 701 F.2d 542, 545 (5th Cir. 1983) ). "[I]nterest properly accrues from the date of the initial judgment," the Brooks Court explained, " 'because that is the date on which the correct judgment should have been entered.' " Id. (quoting Copper Liquor, 701 F.2d at 545 ) (other citations and internal quotation marks omitted) ). See also, Young v. State, 346 Or. 507, 212 P.3d 1258, 1263 (2009) (noting, in a case in which an award had been increased on appeal, that
"[t]he view as now taken by a majority of states is that where a money award has been modified on appeal and the only action necessary in the trial court is compliance with the mandate of the appellate court, then the interest on the award, as modified, should run from the date of the original judgment ..., as if no appeal had been taken.") (citation and internal quotation marks omitted).
Here, of course, our mandate reduced the Board's award, but affirmed it to the tune of slightly less than $149,000.00. Under the majority rules just discussed, post-judgment interest began to accrue on the date of the original judgment. That date was not, as the circuit court correctly noted, the date of the Board's 2009 order, finding liability and awarding damages to the Estate, but was rather, under KRS 44.140, the date of the circuit court's erroneous judgment dismissing the Estate's claim as barred by KSP's immunity (January 5, 2011).[6] Under the majority rules, interest began accruing on that date notwithstanding the fact that the erroneous judgment awarded the Estate nothing, for that was the date a correct judgment-i.e., a judgment awarding $148,000.00 plus-should have been entered.
As the Court of Appeals correctly explained, our law is in accord with these majority rules. Under KRS 360.040, the current post-judgment interest statute, and its similar predecessor[7] our courts have held that an award of damages disallowed and vacated for some reason by the trial court but later reinstated by an appellate court bears interest "from the date the [correct] judgment should have been entered." Elpers, 386 S.W.2d at 268 (reinstating jury verdicts following trial court's erroneous JNOV); Decker v. Glasscock Trucking Serv., 403 S.W.2d 275 (Ky. 1966) (applying Elpers to similar situation).
Damage awards essentially upheld on appeal, but modified to some extent by the appellate court without the need to reopen the record on remand, likewise have been held to accrue post-judgment interest from the date of the trial court's initial judgment, not the remand judgment. Esenbock, 200 S.W.3d at 489 (holding, with respect to a miscalculated award that was increased on appeal, that post-judgment interest begins to accrue on the date of the initial, erroneous award-the date when the correct award should have been made); Stephens v. Stephens, 300 Ky. 769, 190 S.W.2d 327 (1945) (holding, with respect to an *676 award decreased on appeal so as to conform with the evidence (as in this case), that post-judgment interest began to accrue from the date of the first judgment to the extent that that judgment had been upheld); Waterbury v. Waterbury, 281 Ky. 107, 134 S.W.2d 1009 (1939) (same) (citing Noel's Adm'x v. Black's Adm'r, 244 Ky. 655, 51 S.W.2d 955 (1932) ).
This case was complicated to some extent by the fact that our 2014 remand included corrections-reinstatement and modification-for both types of error. Since separately, however, each type of correction results in post-judgment interest beginning to accrue on the date of the initial erroneous judgment, we are convinced that the Court of Appeals correctly held that the two corrections together also call for post-judgment interest from the date of the initial, albeit erroneous, trial court judgment, i.e., January 5, 2011,
Against this conclusion, KSP contends that the Board's 2009 award in favor of the Estate was not a "judgment" for the purposes of the post-judgment interest statute, and further notes that upon KSP's appeal from the Board award the trial court's January 2011 judgment did not confirm the award in any way or "enter" it, as seemingly contemplated by KRS 44.130 and KRS 44.140. Instead, the trial court vacated the award and dismissed the Estate's claim as barred by immunity. KSP then poses a rhetorical question: Can interest accrue on a judgment that was adverse to the claimant? Insisting that the answer is an obvious "no," KSP concludes that the Court of Appeals erred by ruling otherwise.
Of course, the real question is not quite the one KSP asks. The real question, rather, is whether interest can accrue on a judgment adverse to the claimant where that judgment is ultimately determined to have been erroneous and, had it been correct, both could and should have been in favor of the claimant? That question is another way of asking which party, the wrongdoer (tortfeasor here) or the victim, is to bear the cost of delay occasioned by the trial court's error.
KSP maintains that, inasmuch as it was neither responsible for the error nor guilty of any sort of bad faith in raising the issues it raised during the course of these proceedings, it would be unfair to saddle it with interest for what was, after all, the Estate's appeal. As the cases discussed above indicate, however, a majority of courts have decided that a trial court's erroneous setting aside of an award (jury verdict, arbitrator's award, administrative recovery), should not result in a transfer of monies (by diminishing the value of the award) from a victim to an injurer. Contrary to KSP's understanding, in other words, the purpose of the post-judgment interest statute, as we explained in Emberton v. GMRI, supra, is not to penalize judgment debtors for undue delay; the purpose rather is to prevent delay from penalizing judgment creditors. Since, in cases such as this one, "[c]alculating interest from the date of the second [remand] judgment would penalize [the plaintiff] for the trial judge's error," DeLong Equip. Co., 997 F.2d at 1342, interest is to be calculated instead, as the Court of Appeals held, from the initial judgment, even though that judgment was mistakenly adverse to the Estate.
As a last gasp, KSP suggests that this result is contrary somehow to the general rule that waivers of immunity are to be construed narrowly. It is not. KRS Chapter 44, the Board of Claims Act, provides, of course, for a limited waiver of the Commonwealth's immunity from tort claims. As noted above, within that chapter, KRS 44.140(5) states with respect to Board awards challenged on appeal to circuit *677 court that "[t]he court shall enter its findings on the order book as a judgment of the court, and such judgment shall have the same effect and be enforceable as any other judgment of the court in civil causes." This directive to treat a judgment premised on a Board of Claims' award as any other judgment of a Kentucky circuit court is crystal clear.
As noted in considerable detail above, for non-state-actor defendants who find themselves in circumstances like those now confronting KSP-i.e., a verdict and damages' award for the plaintiff, the trial court's erroneous vacation of that award, and an appellate court's reinstatement of it-the post-judgment interest statute, KRS 360.040, makes such defendants liable for post-judgment interest from the date of the initial, erroneous trial court judgment, not the date of the remand judgment. Under the above-quoted section of the Board of Claims Act, circuit court judgments erroneously vacating Board awards "have the same effect," including that of ringing the post-judgment interest bell. While KSP is correct that we are to construe narrowly the waiver provisions of the Board of Claims Act, that rule does not entail that we ignore the Act's plain terms.
CONCLUSION
In sum, the Court of Appeals correctly read the Board of Claims Act as according circuit court judgments entered pursuant to the Act the same treatment under the post-judgment interest statute as ordinary civil judgments. Post-judgment interest accrues from entry of an ordinary judgment that erroneously vacates a damage award or erroneously calculates such an award, where an appellate court can mandate correction of the error without resort to additional proceedings. The Court of Appeals appropriately held that post-judgment interest began to accrue from the circuit court's initial, albeit erroneous, January 5, 2011 judgment. Accordingly, we affirm the decision of the Court of Appeals and remand the matter to the Franklin Circuit Court for entry of an appropriate order.
All sitting. All concur.

This amount is thirty percent of the stated lost earning capacity without the funeral expenses. The Board's reason for excluding the latter is not apparent from its order.

This estimate was made at the time of the Estate's 2015 motion in the circuit court. Because the post-judgment interest statute, KRS 360.040, provides for annual compounding, the Estate's claim has increased some since then. We note, too, that the rate of post-judgment interest changed in June 2017, potentially affecting compounding after that date.

In addition to this case and Esenbock, see, e.g., Chiu v. Frederick, 2009 WL 3672876 (Ky. App. 2009), and Thomas & Betts Corp. v. A & A Mech., Inc., 2008 WL 2696877 (Ky. App. 2008).

For the first time since 1982, the General Assembly last year amended KRS 360.040, in part, to make the statute's separate provisions easier to read. The amendment also lowered the general post-judgment interest rate from twelve percent to six percent as of June 29, 2017. What effect, if any, this change has on the Estate's accruing interest on its interest after that date can be addressed on remand.

Where the remand requires a complete reassessment of damages on a new record, post-judgment interest usually accrues from the post-remand judgment. See Kaiser Aluminum, supra ; Long v. Castle Texas, supra.

Of course, as noted above, the first circuit court judgment in the late 1990s or early 2000s affirmed the Board's initial dismissal on grounds of untimeliness, a position rejected in a 2004 en banc Court of Appeals' decision, Gaither , 161 S.W.3d at 345. After remand and an evidentiary hearing, the Board then entered its December 2009 Final Order upholding the negligence claim and awarding damages.

Prior to 1942, Sec. 2220, Ky. Stats, provided that "[a] judgment shall bear legal interest from its date."