RENDERED: APRIL 15, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1737-MR

LANDON DRAKE DAVIS                                                APPELLANT

                        APPEAL FROM MCCRACKEN CIRCUIT COURT
v.                      HONORABLE WILLIAM A. KITCHEN, III, JUDGE
                        ACTION NO. 16-CI-00418

JAMES LLOYD BROWN,
ADMINISTRATOR OF THE ESTATE OF
JAMES R. BROWN AND SAFECO
INSURANCE COMPANY OF ILLINOIS                                    APPELLEES

AND

NO. 2020-CA-0344-MR

SAFECO INSURANCE COMPANY
OF ILLINOIS                                                      APPELLANT

                        APPEAL FROM MCCRACKEN CIRCUIT COURT
v.                      HONORABLE WILLIAM A. KITCHEN, III, JUDGE
                        ACTION NO. 16-CI-00418

LANDON DAVIS AND JAMES LLOYD
BROWN, ADMINISTRATOR OF THE
ESTATE OF JAMES R. BROWN                                         APPELLEES

AND

NO. 2020-CA-0345-MR

LANDON DRAKE DAVIS                                          CROSS-APPELLANT

                    CROSS-APPEAL FROM MCCRACKEN CIRCUIT COURT
v.                   HONORABLE WILLIAM A. KITCHEN, III, JUDGE
                             ACTION NO. 16-CI-00418

JAMES LLOYD BROWN,
ADMINISTRATOR OF THE ESTATE OF
JAMES R. BROWN AND SAFECO
INSURANCE COMPANY OF ILLINOIS                              CROSS-APPELLEES

OPINION
AFFIRMING IN PART, REVERSING IN PART, AND REMANDING
APPEAL NO. 2019-CA-1737-MR AND CROSS-APPEAL NO. 2020-CA-0345-MR
AND AFFIRMING APPEAL NO. 2020-CA-0344-MR

** ** ** ** **

BEFORE:  MAZE, TAYLOR, AND K. THOMPSON, JUDGES.

TAYLOR, JUDGE:  Landon Drake Davis brings Appeal No. 2019-CA-1737-MR

from an October 22, 2019, Amended Order and Judgment.  Safeco Insurance

Company of Illinois brings Appeal No. 2020-CA-0344-MR and Landon Drake

Davis brings Cross-Appeal No. 2020-CA-0345-MR from a February 10, 2020,

judgment.  We affirm in part, reverse in part, and remand Appeal Nos. 2019-CA-

1737-MR and 2020-CA-0345-MR.  We affirm Appeal No. 2020-CA-0344-MR.

-2-

On June 4, 2015, a motor vehicle driven by James Brown collided with a motor vehicle driven by Landon Drake Davis. In the vehicle driven by James, two passengers, Margaret A. Brown (James's wife) and Mary Harris were killed.

On June 2, 2016, James and Pamela Taylor, as Administrator of the Estate of Margaret Brown, (Estate) filed an action in the McCracken Circuit Court against, *inter alios*, Landon.[1] James and the Estate claimed that Landon negligently operated his motor vehicle, thereby causing the accident. James sought damages for physical injuries he suffered, and the Estate sought damages for the wrongful death of Margaret.

Landon then filed an answer and counterclaim against James. In the counterclaim, Landon asserted that James caused the accident by negligently operating his motor vehicle. Landon sought recovery for compensatory damages as a result of bodily injury caused by the accident, as well as costs and attorney's fees.

Landon also filed third party complaints against his own motor vehicle insurance carrier, Safeco Insurance Company of Illinois (Safeco). Therein, Landon stated that he sustained bodily injuries in the accident and that James's

---

[1] The record reveals that Pamela Taylor, as Administrator of the Estate of Margaret A. Brown, entered into a Settlement Agreement with James Brown and his motor vehicle insurance carrier, State Farm Mutual Automobile Insurance Company.

bodily injury liability limits had been exhausted by payments to other third parties injured in the accident. As Landon could not recover against James, Landon alleged that he was entitled to recover either uninsured motorist (UM) coverage or underinsured motorist (UIM) coverage per the motor vehicle insurance policy issued by Safeco. Landon's insurance policy carried $250,000 per person/$500,000 per accident in UIM coverage and $250,000 per person/$500,000 per accident in UM coverage.

Safeco filed an answer and denied that Landon was entitled to either UM or UIM benefits under the insurance policy. Safeco eventually filed a motion for partial summary judgment upon the issue of UM coverage. Safeco argued that James's motor vehicle was insured at the time of the accident with an insurance policy issued by State Farm. Safeco maintained that James's insurance policy provided bodily injury coverage with limits of $50,000 per person and $100,000 per accident. As James's motor vehicle was insured, Safeco argued that Landon was not entitled to UM benefits.

In his response, Landon agreed that Brown's motor vehicle insurance policy provided bodily injury coverage of $50,000 per person and $100,000 per accident. Nonetheless, Landon pointed out that the $100,000 bodily injury liability

limit was paid to passengers in both vehicles[2] and that he received no proceeds therefrom. Under his insurance policy, Landon argued that UM coverage was triggered if the tortfeasor's insurance company denied coverage for bodily injury sustained in the accident. Landon maintained that State Farm effectively denied him coverage for injuries because the bodily injury coverage in James's policy was exhausted. As a result, Landon asserted he was entitled to UM coverage under his motor vehicle insurance policy with Safeco.

Before trial, the circuit court rendered an order regarding bifurcating the various claims. The court ordered that Landon's claims against Safeco would be bifurcated from the underlying negligence claims between Landon, James, and the Estate. The court specifically directed the underlying negligence claims would be tried by jury, and then Landon's claim for UM or UIM benefits against Safeco would be adjudicated. Additionally, the court ordered that "Safeco shall not be required to participate in the trial, but shall be bound by the jury verdict with respect to damages awarded to [Landon], if any, applicable to the accident." February 8, 2019, Order at 1.

---

[2] James and State Farm Mutual Automobile Insurance Company entered into Settlement Agreements with the personal representatives of the estates of James's deceased passengers and with a passenger in Landon Davis's vehicle. These settlements exhausted the bodily injury coverage available under James's motor vehicle insurance policy.

A jury trial ensued, and the jury found that both Landon and James negligently operated their respective motor vehicles that caused the accident. The jury apportioned Landon to be 15 percent at fault and James to be 85 percent at fault. Relevant herein, the jury awarded Landon $3,157.50 in past medical expenses and $146,842.50 in past/future pain and suffering, for total damages of $150,000.

On June 18, 2019, the circuit court rendered Pretrial Orders, Trial Orders, and Judgments. Therein, the circuit court granted Safeco's partial motion for summary judgment and determined that Landon was not entitled to UM coverage. Conversely, the court also concluded that Landon was entitled to UIM coverage under the insurance policy. As Landon received no benefits from James's bodily injury coverage, the court determined that Landon was entitled to recover $124,816.13[3] in UIM benefits from Safeco. The court also rendered judgment against James for $124,816.13. The court ordered that the judgment of $124,816.13 was to bear interest of 6 percent per annum and that Landon should recover costs.

Safeco filed a Kentucky Rules of Civil Procedure (CR) 59.05 motion to vacate the judgment. Safeco maintained that the circuit court erred by not

___

[3] The $150,000 award by the jury was reduced by $3,157.50 in basic reparation benefits previously paid to Landon, and then that amount was further reduced by 15 percent, representing 15 percent of apportioned fault to Landon.

applying a $50,000 setoff to Landon's recovery of $124,816.13 in UIM benefits. Safeco pointed out that James's insurance policy contained bodily injury liability coverage in the amount of $50,000 per person. Pursuant to its policy language and Kentucky Revised Statutes (KRS) 304.39-320(5), Safeco argued that Landon's total amount of recoverable damages under UIM coverage should be reduced or setoff by the full amount of the bodily injury coverage ($50,000 per person) contained in James's insurance policy, even though Landon did not receive any payment from such bodily injury coverage. So, Safeco contended that Landon was only entitled to $74,816.13 ($124,816.13 - $50,000) in UIM benefits. Safeco also alleged that Landon was not entitled to recover interest on the judgment or costs.

By order entered August 15, 2019, the circuit court granted Safeco's CR 59.05 motion to vacate and set aside the June 18, 2019, Pretrial Orders, Trial Orders and Judgments. Later, on August 19, 2019, the circuit court again rendered Pretrial Orders, Trial Orders, and Judgments. Therein, the circuit court granted Safeco's motion for partial summary judgment and concluded that Landon was not entitled to UM coverage. But, the court decided Landon was entitled to UIM coverage under the insurance policy issued by Safeco. The court also ordered that Landon was entitled to judgment against Brown for $124,816.13. The court included complete CR 54.02 language.

Landon then filed a CR 59.05 motion to vacate the August 19, 2019, Pretrial Orders, Trial Orders and Judgments. Landon argued that the court erroneously failed to order James to pay court costs and erroneously determined that UM coverage was inapplicable. Landon also pointed out that the court failed to decide the setoff issue as to UIM coverage and failed to render a judgment against Safeco.

Subsequently, in a separate order entered on October 22, 2019, the circuit court decided:

> Ultimately, the plain language of KRS 304.39-320(5) necessitates awarding a set-off to Safeco. Specifically, it mandates that a UIM insurer must be given a set-off "against the total damages in the amount of the limits of the underinsured motorist's liability polic[y] in all cases to which this section applies, even if the settlement with the underinsured motorist under subsection (3) of this section or the payment by the underinsured motorist insurer under subsection (4) of this section is for less than the underinsured motorist's full liability policy limits." Davis argues that the prepositional phrase "in all cases to which this section applies" refers to the title of KRS 304.39-320, "Underinsured motorist coverage; effect of settlement of claims," relegating the statute's effectiveness, by reference, to cases involving settlement, which would bar its applicability here. However, the scope of KRS 304.39-320 is broader than merely settlement and set-off issues; it details UIM definitions, availability, and insurers' subrogation rights, among other things. This expansive scope makes clear that the legislature intended a wide applicability and did not, as Davis suggests, intend merely to address settlement issues. Further, the title of the statute does not apparently limit the statute's

applicability, nor does it carry any legal authority. Except for Kentucky's adoption of UCC provisions and their headings, "[t]itle heads, chapter heads, section and subsection heads or titles, and explanatory notes and cross references, in the Kentucky Revised Statutes, do not constitute any part of the law." KRS 446.140.

Davis also argues that the policy language of Safeco's UIM coverage preserves set-off entitlement only where a settlement occurs, not where, as is the situation here, the insured did not settle with the tortfeasor. In support of that argument, Davis points to a declaration in Safeco's policy that reduces "the insured's total damages by any amount to that insured, under any bodily injury liability bonds or policies applicable to the underinsured motor vehicle, that such insured did not recover as a result of settlement between that insured and the insurer of an underinsured motor vehicle." While this language does preserve a set-off entitlement in settlement situations, it does not purport to be the exclusive avenue for set-offs, nor does it expressly waive any other set-off entitlements Safeco may be awarded. As such, Safeco retains its statutory right to set-off, the scope of which goes beyond settlement and applies to the facts here.

Considering the unambiguous language of the set-off provision in Kentucky's MVRA, alongside that statute's focus on policy limits rather than amount actually received in awarding set-offs, Safeco is entitled to the fifty-thousand-dollar ($50,000) set-off, the amount of Brown's per-person liability policy limit. KRS 304.39-320 does not specifically address a situation where, as is the case here, multiple injured parties have exhausted the tortfeasor's policy prior to one or more other injured party receiving anything from that policy. And while a situation such as this may call for an alternative approach to set-off entitlements, the statute does not currently contemplate it, and its plain meaning compels awarding a set-off.

Order at 4-6. The court then held that both Landon's UIM policy provision and KRS 304.39-320(5) mandated a setoff of the $50,000 bodily injury coverage contained in James's policy, even though Landon received no payment under the coverage.

Also, on October 22, 2019, the circuit court rendered an Amended Order and Final Judgment. Therein, the court awarded Landon a judgment against James for $124,816.13, plus 6 percent interest, from June 18, 2019, and a judgment for $3,806.13 as court costs, plus 6 percent interest, from June 18, 2019. The court included complete CR 54.02 language as to that order and as to the August 19, 2019, Pretrial Orders, Trial Orders and Judgments.

Landon then timely filed a CR 59.05 motion to vacate the October 22, 2019, order that concluded Safeco was entitled to the $50,000 setoff. Landon maintained that James's bodily injury liability coverage of $50,000 was exhausted by settlements with other parties and that it was improper to mandate a $50,000 setoff when he did not receive the benefit of said coverage. In support thereof, he cited to the UIM policy language and KRS 304.39-320(5).

In the interim, on November 15, 2019, Landon filed Appeal No. 2019-CA-1737-MR from the August 19, 2019, orders and the October 22, 2019, Amended Order and Final Judgment.

By order entered December 5, 2019, the circuit court denied Landon's CR 59.05 motion to vacate the October 22, 2019, order regarding Safeco's setoff. Thereafter, Landon filed a motion for final judgment against Safeco. Landon pointed out that the court determined that Safeco was entitled to a $50,000 setoff but had failed to render a judgment against Safeco.

Finally, by Judgment entered February 10, 2020, the circuit court adjudged that Landon was entitled to recover from Safeco $74,816.13 in UIM benefits plus 6 percent interest from June 28, 2019, and $3,806.13 in costs plus 6 percent interest from June 28, 2019.

Safeco filed Appeal No. 2020-CA-0344-MR from the February 10, 2020, judgment, and Landon filed Cross-Appeal No. 2020-CA-0345-MR. We shall initially consider Landon's appeals and then Safeco's appeal.

<u>APPEAL NO. 2019-CA-1737-MR AND</u>
<u>CROSS-APPEAL NO. 2020-CA-0345-MR</u>

<u>I. Uninsured Motorist Coverage.</u>

Landon initially contends that the circuit court improperly rendered summary judgment concluding that he was not entitled to UM coverage under the motor vehicle insurance policy issued by Safeco or under the UM statute (KRS 304.20-020). Landon particularly argues that James was essentially an uninsured motorist because his bodily injury coverage limits were exhausted by payments to third parties. Consequently, Landon maintains that he was effectively denied

-11-

coverage for bodily injuries he suffered under James's insurance policy and was thus entitled to UM benefits.

To begin, summary judgment is proper where there exists no genuine issue of material fact and movant is entitled to judgment as a matter of law. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991); CR 56.03. The issue regarding entitlement to UM coverage requires the interpretation of the insurance contract and involves no factual findings. Thus, our review proceeds *de novo*. *Brown v. Griffin*, 505 S.W.3d 777, 781 (Ky. App. 2016). In rendering summary judgment, the circuit court concluded that James's motor vehicle was, in fact, insured; thus, Landon was not entitled to UM coverage.

Under KRS 304.20-020(2), an uninsured motor vehicle is:

[D]eemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency; an insured motor vehicle with respect to which the amounts provided, under the bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such motor vehicle, are less than the limits described in KRS 304.39-110; and an insured motor vehicle to the extent that the amounts provided in the liability coverage applicable at the time of the accident is denied by the insurer writing the same.

*See Burton v. Farm Bureau Ins. Co.*, 116 S.W.3d 475, 477-78 (Ky. 2003).

However, an insurance company may "provide coverages and terms and conditions

in addition to those required by the statute." *Dowell v. Safe Auto Ins. Co.*, 208

S.W.3d 872, 876 (Ky. 2006) (quoting *Burton*, 116 S.W.3d at 478)).

The relevant policy language from the motor vehicle policy issued by

Safeco reads, in relevant part:

INSURING AGREEMENT

A.  We will pay damages which an **insured** is legally
entitled to recover from the owner or operator of an
**uninsured motor vehicle** because of **bodily injury**:

1.  Sustained by that insured; and

2.  Caused by an accident.

. . . .

C.  "**Uninsured motor vehicle**" means a land motor
vehicle or trailer of any type:

. . . .

4.  To which a bodily injury liability bond or policy
applies at the time of the accident, but the
bonding or insuring company:

a.  denied coverage; or

b.  is or becomes insolvent.

Safeco's motor vehicle policy at 14-15 (emphasis added).

In Kentucky, it is recognized that an insurance contract is a contract of

adhesion and any ambiguity should be interrupted in favor of the insured.

*Nationwide Mut. Ins. Co. v. Hatfield*, 122 S.W.3d 36, 40 (Ky. 2003); *LaFrange v.*

-13-

*United Serv. Auto. Ass'n*, 700 S.W.2d 411, 413 (Ky. 1985). Generally, terms in an insurance policy are afforded their plain and ordinary meaning "in light of the usage and understanding of the average person." *Consol. Ins. Co. v. Slone*, 538 S.W.3d 922, 927 (Ky. App. 2018) (quoting *Stone v. Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 811 (Ky. App. 2000)).

In this case, the relevant language of KRS 304.20-020(2) and of Landon's UM insurance policy provides that UM coverage is triggered when bodily injury liability coverage is denied. Under the uncontroverted facts herein, we do not believe that State Farm denied Landon's coverage within the meaning of KRS 304.20-020(2) or the UM policy provision. To be exact, Landon was not denied coverage. Rather, Landon could not recover damages because State Farm paid other parties the limits of James's bodily injury coverage.

We are buttressed in our interpretation of KRS 304.20-020(2) and Landon's UM policy provision by the Court's holding in *Wren v. Ohio Casualty Insurance Company*, 535 S.W.2d 849 (Ky. 1976). In *Wren*, appellants were involved in a motor vehicle accident, and the tortfeasor's insurance carrier paid the full bodily injury liability limits to third parties. Appellants argued "that when the liability carrier refused to pay appellants' claims it denied the amounts provided in the policy." *Wren*, 535 S.W.2d at 849. Thus, appellants maintained they were

-14-

entitled to UM coverage. The Kentucky Supreme Court rejected such interpretation. *Id.*

Accordingly, we hold that James's vehicle was not an uninsured motor vehicle, and the circuit court properly rendered summary judgment determining that Landon was not entitled to UM coverage.

II. Underinsured Motorist Coverage.

There is no dispute that Landon's UIM coverage was available for the claim. However, Landon asserts that the circuit court erroneously applied a $50,000 setoff to his total awarded damages of $124,816.13. As noted, although James's vehicle was covered by motor vehicle insurance with liability limits for bodily injury of $50,000 per person/$100,000 per accident, Landon received no such bodily injury benefits. The bodily injury liability limit of $100,000 was fully paid to other parties in the accident, and the bodily injury benefits were exhausted. Because none of James's liability coverage for bodily injury was available to Landon, Landon argues that the circuit court erred by applying the $50,000 setoff (paid to other parties by James's insurance company) to reduce recovery of UIM benefits from $124,816.13 to $74,816.13. Landon maintains that he is entitled to UIM benefits in the full amount of his uncompensated damages ($124,816.13) for

bodily injury without setoff under the UIM policy provision and/or under KRS 304.39-320.[4]

In applying the setoff, the circuit court relied heavily upon the statutory language of KRS 304.39-320(5). The circuit court believed that KRS 304.39-320(5) mandated setoff of the bodily injury liability limit of James's vehicle against the total damages suffered by Landon, even though Landon received nothing from said liability insurance coverage. The circuit court viewed KRS 304.39-320(5) as having an "expansive scope." October 22, 2019, Order at 4.

More importantly to these appeals, the circuit court also concluded that Landon's policy as to UIM coverage **only** provided for setoff of the liability limit for bodily injury coverage where the insured and underinsured motorist entered into a settlement, which did not occur in our case. The court, nevertheless, held that "[w]hile this language does preserve a set-off entitlement in settlement situations, it does not purport to be the exclusive avenue for set-offs, nor does it expressly waive any other set-off entitlements Safeco may be awarded." October 22, 2019, Order at 5. Although the court acknowledged that the UIM policy provision only provided for setoff when the insured settles with the underinsured

---

[4] This case involves the novel issue of setting off bodily injury liability limits against underinsured motorist benefits in a multiple-claimant situation where the bodily injury coverage was exhausted by payments to some but not all claimants. So, our case is distinguishable from cases involving single or multiple claimants who received full per-person bodily injury liability limits or who settled for less. *See, e.g.*, *Progressive Max Ins. Co. v. Jamison*, 431 S.W.3d 452 (Ky. App. 2013).

-16-

motorist, the court permitted the setoff as the policy did not amount to a waiver of Safeco's setoff under KRS 304.39-320(5).

The Kentucky Supreme Court has recognized that parties "are free to contract . . . on the form and scope of [UIM] coverage, so long as the terms remain consistent with the remaining provisions of the MVRA [motor vehicle reparations act]." *Phila. Indem. Ins. Co., Inc. v. Tryon*, 502 S.W.3d 585, 588 (Ky. 2016). When interpreting any contract, the contract "must be construed as a whole, giving effect to all parts and every word in it if possible." *Big Sandy Company, L.P. v. EQT Gathering, LLC*, 545 S.W.3d 842, 845 (Ky. 2018). Generally, terms in an insurance policy are afforded their plain and ordinary meaning "in light of the usage and understanding of the average person." *Consol. Ins. Co. v. Slone*, 538 S.W.3d 922, 927 (Ky. App. 2018) (quoting *Stone v. Kentucky Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 811 (Ky. App. 2000)). And, "where a [insurance] policy is susceptible to two different interpretations, the interpretation favorable to the insured is adopted." *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 225 (Ky. 1994); *see also K.M.R. v. Foremost Ins. Grp.*, 171 S.W.3d 751, 753 (Ky. App. 2005). As hereinbefore stated, the interpretation of a contract presents an issue of law and our review proceeds *de novo*. With this in mind, we now turn to the relevant portions of Landon's UIM policy provision:

-17-

UNDERINSURED MOTORISTS COVERAGE

INSURING AGREEMENT

A.  We will pay damages which an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury**:

   1. Sustained by that **insured**; and

   2. Caused by an accident.

   . . . .

C.  "**Underinsured motor vehicle**" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for **bodily injury** under that bond or policy to an **insured** is not enough to pay the full amount that **insured** is legally entitled to recover as damages.

. . . .

## LIMIT OF LIABILITY

A.  The limit of liability shown in the Declarations for "each person" for Underinsured Motorist Coverage is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in any one accident. Subject to this limit for "each person", the limit of liability shown in the Declarations for "each accident" for Underinsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident.

. . . .

    D.   We will reduce the **insured's** total damages by any amount available to that insured, under any bodily injury liability bonds or policies applicable to the **underinsured motor vehicle**, that such insured did not recover as a result of a settlement between that **insured** and the insurer of an **underinsured motor vehicle**. However, any reduction of that **insured's** total damages will not reduce the limit of liability for this coverage.

       This Paragraph (D.) shall not apply if we advance payment to the insured in an amount equal to the tentative settlement with the insurer of the **underinsured motor vehicle**.

Safeco's motor vehicle policy at 28-30 (emphasis added).

Under the heading "Insuring Agreement," are found two relevant sections of the UIM policy provision - Section A and Section C. Under Section A, Safeco is plainly bound to pay for bodily injury damages the insured is "legally entitled to recover" from the owner/operator of an underinsured vehicle provided such damages were sustained by the insured and caused by an accident. The term "legally entitled to recover" means those bodily injury damages that the insured can demonstrate that he suffered due to the fault of the underinsured driver and that remain uncompensated after payment of any available bodily injury liability benefit by the insurance carrier of the underinsured driver. *See Hatfield*, 122 S.W.3d at 39-40 (holding that UIM policy language stating that the insurer would pay sums the insured was legally entitled to recover or due by law merely required

-19-

the insured to demonstrate fault of the underinsured driver and the extent of uncompensated damages suffered).

Herein, Landon received no compensation from James's insurance carrier. A jury trial was held as to the respective fault of Landon and James and as to the total amount of bodily injury damages Landon suffered due to the accident. The jury found James was 85 percent at fault and Landon 15 percent at fault for the accident. The jury also found that Landon suffered bodily injury damages of $150,000 due to the accident, which was reduced to $124,816.13. Under the plain terms of Section A, Safeco is contractually required to pay Landon $124,816.13 in UIM benefits.

As to Section C, the term "underinsured motor vehicle" is defined as a motor vehicle insured with bodily injury coverage "but the amount paid [thereunder] . . . is not enough to pay the full amount the insured is legally entitled to recover as damages." Under this definition, James's motor vehicle would clearly constitute an underinsured motor vehicle. The bodily injury coverage upon James's vehicle was uncontrovertibly insufficient to pay Landon the full amount of damages he was legally entitled to recover ($124,816.13). *See Hatfield*, 122 S.W.3d at 39-40. By the policy's definition found in Section C, James's vehicle was an underinsured motor vehicle.

Next, under the heading "Limit of Liability," are two pertinent sections of the UIM policy provision – Section A and Section D. Section A is straight forward and plainly provides that the per person UIM coverage limit is the maximum amount Safeco will pay for all damages suffered by a single person. In London's policy, the per person limit of UIM coverage was $250,000, well above Landon's uncompensated bodily injury damages.

Section D is the only section in the UIM policy provision that contains a setoff provision; therefore, its terms are of particular import. It states that Safeco will reduce the insured's total damage by the amount available to the insured, under a bodily injury liability policy covering the underinsured motor vehicle, that the insured did not recover in a settlement with the underinsured motor vehicle insurance carrier. Stated differently, if the insured settles with the underinsured motor vehicle insurance company for less than the full amount of available bodily injury coverage, the insured's total UIM claim will be reduced by the difference between the settlement amount and the full amount of available bodily injury coverage. Based on the policy language, Section D is inapplicable herein for two reasons. First, Landon did not enter into a settlement with State Farm. And second, there was no bodily injury liability coverage "available" to Landon.

The term "available" as utilized in Section D should be given its plain and ordinary meaning. *See Consol. Ins. Co.*, 538 S.W.3d at 927. The term

-21-

available ordinarily means "present or ready for immediate use." *Available*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 2002). In the context of Section D, we interpret available to mean bodily injury coverage present or ready for immediate use by the insured, as opposed to exhausted liability limits of bodily injury coverage that are unavailable for use by the insured.

In this case, there was no bodily injury coverage present or ready for immediate use by Landon. As previously pointed out, the bodily injury liability limits covering James's motor vehicle had been exhausted by payments to other parties; therefore, no benefits or payments were present or ready for Landon's immediate use. Consequently, the setoff provision of Section D is inapplicable herein.

Under the terms of the UIM policy provision, Landon is entitled to $124,816.13 in UIM benefits, and the only setoff provision (Section D) found in the UIM coverage provision is clearly inapplicable. The circuit court erred by failing to give full force and effect to the UIM policy negotiated between Landon and Safeco. The Kentucky Supreme Court has recognized that an insured and insurer are free to contract the terms, the conditions, and the scope of UIM coverage. *Philadelphia Indem. Ins. Co., Inc.*, 502 S.W.3d at 588. And, the parties are also free to contract for more or additional insurance coverage than what is required by statute. *LaFrange*, 700 S.W.2d at 412; *Motorist Mut. Ins. Co. v. Glass*,

996 S.W.2d 437 (Ky. 1997), *abrogated on other grounds by Hollaway v. Direct General Insurance Co. of Mississippi, Inc.*, 497 S.W.3d 733 (Ky. 2016). We, thus, reverse the circuit court's determination that Safeco was entitled to a $50,000 setoff, and upon remand, the circuit court shall render judgment in favor of Landon for $124,816.13 in UIM benefits against Safeco.

APPEAL NO. 2020-CA-0344-MR

I. Costs.

Safeco asserts that the circuit court committed reversible error by awarding Landon costs of $3,806.13. In particular, Safeco contends that Landon was not a successful or prevailing party against Safeco entitled to costs under KRS 453.040 or CR 54.04. Safeco argues that Landon was successful or prevailing against James. Safeco also maintains that it had no obligation to pay UIM benefits until liability between James and Landon was determined and any damages due Landon were fixed by the jury. Safeco points out that Landon's claims were bifurcated and argues that Brown was the real party in interest during trial. According to Safeco "[t]here is no basis in Kentucky law for the court to have awarded costs against an ancillary, nominal, and bifurcated party like Safeco was in this case." Safeco's Brief at 9.

The award of costs is governed by KRS 453.040 and CR 54.04. KRS 453.040(1)(a) reads:

(1) Except as provided by subsection (2):

>   (a) The successful party in any action shall recover his costs, unless otherwise provided by law. If the plaintiff succeeds against part of the defendants, and not against others, he shall recover his costs from the former, and the latter shall recover their costs from the plaintiff.

And, CR 54.04(1) provides, in relevant part:

>   (1) Costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the Commonwealth, its officers and agencies shall be imposed only to the extent permitted by law. In the event of a partial judgment or a judgment in which neither party prevails entirely against the other, costs shall be borne as directed by the trial court.

Under KRS 453.040(1)(a), a successful party shall recover costs, and under CR 54.04(1), a prevailing party shall recover costs. Per CR 54.04, the circuit court is vested with discretion to determine the allocation of costs in a situation of a partial judgment.

In this case, it is clear that Landon was the prevailing or successful party as to its claim for UIM coverage against Safeco. Safeco chose not to pay UIM benefits until: 1) it was sued by Landon; 2) Landon had obtained a favorable jury verdict; and 3) judgment was entered against the company.[5] Under these

---

[5] Our case law is clear that UIM benefits may be recovered without first obtaining a judgment against the tortfeasor/underinsured motorist. *Coots v. Allstate Ins. Co.*, 853 S.W.2d 895, 899 (Ky. 1993).

circumstances, we conclude that the circuit court properly awarded Landon costs against Safeco.

II. Interest.

Safeco further argues that the circuit court erroneously awarded Landon post-judgment interest upon the $74,816.13 judgment from June 18, 2019. Safeco initially maintains that it tendered payment of UIM benefits in the amount of $74,816.13 by check to Landon on August 29, 2019, which was six months before the February 10, 2020, judgment from which Safeco appealed. Safeco argues that it paid Landon the UIM benefits owed as soon as "Safeco knew its UIM coverage was applicable and the amount of damages awarded against Brown." Safeco's Brief at 12. Therefore, Safeco argues the award of interest was improper. Alternatively, Safeco argues that if interest was recoverable, the circuit court erroneously made such interest payable from June 18, 2019. Safeco notes that the June 18, 2019, date corresponds to the date of initial Pretrial Orders, Trial Orders, and Judgments rendered after the jury verdict. Safeco maintains that the June 18, 2019, orders and judgment were set aside by order entered August 15, 2019. Consequently, it was improper for the circuit court to order interest to begin on such date.

KRS 360.040 provides, in relevant part:

(4) When a claim for unliquidated damages is reduced to judgment, such judgment may bear less interest than six

percent (6%) if the court rendering such judgment, after a hearing on that question, is satisfied that the rate of interest should be less than six percent (6%). All interested parties must have due notice of said hearing.

Under KRS 360.040(4), interest shall accrue from entry of the final judgment adjudicating a claim seeking unliquidated damages. *Commonwealth, Justice and Public Safety Cabinet, Dep't of Ky. State Police v. Gaither,* 539 S.W.3d 667, 672 (Ky. 2018). Our review of an award of post-judgment interest is for an abuse of discretion. *Lipson v. University of Louisville*, 556 S.W.3d 18, 34 (Ky. App. 2018).

To begin, we note interest is clearly recoverable in this case pursuant to KRS 360.040. A judgment in favor of Landon was rendered and interest was recoverable from the date of the initial judgment. *Gaither*, 539 S.W.3d at 674-75.

In this case, Safeco claims that it tendered a check to Landon for $74,816.13 in UIM benefits on August 29, 2019, after entry of the court's August 19, 2019, orders and judgment. However, Landon was awarded judgment for $124,816.13 in UIM benefits, and Landon attempted to clarify whether the tendered check of $74,816.13 was an unconditional payment or represented payment in full of UIM benefits by Safeco. Apparently, Safeco did not respond to Landon, and he declined to accept the check, given the amount owed was in dispute. Landon then declined the $74,816.13 check to the circuit court, which presumably still has possession of the check.

As to the proper date to begin post-judgment interest, the circuit court commenced interest on June 18, 2019. As pointed out by Safeco, it appears the circuit court selected June 18, 2019, as its initial Pretrial Orders, Trial Orders, and Judgments were entered on that date. Therein, the circuit court awarded Landon $124,816.13 in UIM benefits against Safeco. As set forth in this Opinion, $124,816.13 was the proper amount of UIM benefits owed by Safeco to Landon under the insurance policy. Our ruling in effect reinstates the June 18, 2019, Pretrial Orders, Trial Orders and Judgment as the original post-trial date that adjudicated Safeco's liability to Landon for $124,816.13. Thus, it would be proper for post-judgment interest to accrue from such date. *See Gaither,* 539 S.W.3d at 674. Therefore, we do not believe the circuit court abused its discretion by awarding post-judgment interest accruing from June 18, 2019.

We view any remaining contentions of error raised by either Landon or Safeco to be moot or without merit.

To summarize, we reverse in part the circuit court's February 10, 2020, judgment awarding Landon $74,816.13 in UIM benefits. Upon remand, the circuit court shall render judgment in favor of Landon in the amount $124,816.13 against Safeco, effective from its original judgment entered on June 18, 2019. In all other respects, we affirm the circuit court.

For the foregoing reasons, we affirm in part, reverse in part, and remand Appeal No. 2019-CA-1737-MR and Cross-Appeal No. 2020-CA-0345-MR for proceedings consistent with this Opinion and affirm Appeal No. 2020-CA-0344-MR.

MAZE, JUDGE, CONCURS.

THOMPSON, K., JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANT/CROSS-APPELLANT, LANDON DRAKE DAVIS:

James A. Harris, Jr.
Paducah, Kentucky

BRIEFS FOR APPELLEE/CROSS-APPELLEE, SAFECO INSURANCE COMPANY OF ILLINOIS:

Christopher M. Mussler
Alexander J. Kuebbing
Louisville, Kentucky